# United States Court of Appeals for the Federal Circuit

———————————

**TRUSTED INTEGRATION, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

———————————

2010-5142

———————————

Appeal from the United States Court of Federal Claims in Case No. 09-CV-759, Judge Lynn J. Bush.

———————————

Decided: October 14, 2011

———————————

JOHN A. BONELLO, David, Brody & Dondershine, LLP, of Reston, Virginia, argued for plaintiff-appellant. With him on the brief was THOMAS K. DAVID.

JAMES R. SWEET, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DEBORAH A. BYNUM, Assistant Director.

———————————

Before BRYSON, MOORE, and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

This case involves the application of 28 U.S.C. § 1500, which precludes the United States Court of Federal Claims ("CFC") from exercising subject matter jurisdiction over "any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." Applying § 1500, the CFC dismissed Trusted Integration, Inc.'s ("Trusted Integration") three count complaint against the United States. Because we conclude that Count II, but only Count II, of Trusted Integration's complaint is not barred by § 1500, we affirm-in-part and reverse-in-part.

## BACKGROUND

### A.   Factual Background[1]

In 2002, Congress enacted the Federal Information Security Management Act ("FISMA"), Pub. L. No. 107-347, 116 Stat. 2946–2955 (2002) (codified at 44 U.S.C. §§ 3541–49 (2006)). FISMA created a comprehensive framework for the management and oversight of information security in the federal government. *Trusted Integration, Inc. v. United States*, 93 Fed. Cl. 94, 95 (Fed. Cl. 2010). Under FISMA, federal agencies must meet certain security standards, compliance with which is monitored by the Office of Management and Budget ("OMB"). Importantly, FISMA allows agencies to use commercial products in order to achieve compliance.

Trusted Integration is a commercial supplier of FISMA compliance solutions. Its primary product, Trust-

---

[1]   Because we review the CFC's ruling on a motion to dismiss, these facts are gleaned from Trusted Integration's complaint and are assumed to be true for purposes of this appeal.

edAgent, is the leading FISMA compliance product utilized by federal agencies. In December 2003, the United States Department of Justice ("DOJ") and Trusted Integration began a pilot program using TrustedAgent to meet DOJ's FISMA obligations. Based on the results of the pilot program, in June 2004, DOJ purchased a license to use TrustedAgent as part of its FISMA solution, known as Cyber Security Assessment Management ("CSAM"). In accordance with this agreement, DOJ was licensed to use TrustedAgent for "internal business use." Joint Appendix ("J.A.") 25. The license also required DOJ to maintain the confidentiality of the TrustedAgent product and related documentation.

In the summer of 2006, OMB launched a new program called Information System Security Lines of Business for FISMA reporting. Under this program, every federal agency was invited to submit its FISMA compliance solution to be considered as a "Center of Excellence" ("COE"). After receipt of these solutions, OMB would designate a limited number of agencies as COEs, and all other federal agencies would be required to purchase their FISMA compliance solution from one of the designated COE agencies.

Although Trusted Integration could have partnered with other agencies that utilized TrustedAgent, Trusted Integration agreed to participate only in DOJ's submission for COE consideration. Because of limitations in its license agreement with Trusted Integration, however, DOJ needed to enter into a separate agreement with Trusted Integration to allow it to submit its CSAM solution for consideration as a COE. Trusted Integration and DOJ, thus, entered into to an agreement to utilize TrustedAgent as part of the CSAM solution it submitted to OMB. The limitations of the license agreement between

Trusted Integration and DOJ otherwise remained unchanged and in force.

In September 2006, Trusted Integration and DOJ submitted a joint statement of capabilities for CSAM in response to OMB's request for COE proposals. Between September and December 2006, Trusted Integration and DOJ conducted a series of demonstrations of the CSAM product in support of DOJ's bid for COE status. All of those demonstrations included TrustedAgent. In October 2006, moreover, DOJ presented CSAM to the COE selection committee, representing that TrustedAgent would be an integral part of its CSAM proposal. *Trusted Integration*, 93 Fed. Cl. at 96.

Despite these representations, and without providing notice to Trusted Integration, near the end of 2006, DOJ began developing its own alternative to the TrustedAgent component of CSAM. While developing an alternative to TrustedAgent, DOJ developers accessed the TrustedAgent Oracle database for the purpose of learning about the system's architecture. DOJ developed this alternative to increase revenue from sales of CSAM in the event DOJ was selected as a COE.

In February 2007, OMB selected DOJ as one of two FISMA COEs. In accordance with OMB directives, agencies were required to purchase a FISMA solution from one of the COEs by April 2007, implementing the purchased solution by no later than fiscal year 2009.

Shortly after its selection as a COE, DOJ began offering agencies a modified version of CSAM that substituted its newly developed alternative for the TrustedAgent software. During several presentations to agency customers, DOJ made disparaging comments about the quality of TrustedAgent. Despite these statements, however, DOJ continued to indicate to potential customers that Truste-

dAgent was in fact an integral component of the CSAM it would provide. These representations were made as late as March 13, 2007.

In April 2007, DOJ informed Trusted Integration that it would no longer offer TrustedAgent as part of its CSAM. DOJ indicated it had decided to use its own alternative because some of its users experienced data loss and adverse performance issues with TrustedAgent.

## B. Procedural History

On May 13, 2009, Trusted Integration filed a complaint ("district court complaint") in the United States District Court for the District of Columbia, seeking recovery against the United States, asserting three counts: (1) a Lanham Act claim for false designation of origin; (2) a common law unfair competition claim; and (3) a breach of fiduciary duty claim. *Id.* Trusted Integration sought $15 million in damages. *Id.*

On November 6, 2009, Trusted Integration filed a complaint in the CFC ("CFC complaint"), which gave rise to the present appeal. In the CFC, Trusted Integration sought relief against the United States, asserting three counts: (1) breach of an oral or implied-in-fact contract; (2) breach of the TrustedAgent license agreement; and (3) breach of the duty of good faith and fair dealing. *Id.* As with its district court complaint, Trusted Integration sought $15 million in damages.

After the CFC suit was filed, the United States sought dismissal of the district court action in its entirety. Specifically, the DOJ asserted that Trusted Integration's claims were either within the exclusive jurisdiction of the CFC or the United States had not waived its sovereign immunity. The district court agreed, in part, with the government's arguments. On January 20, 2010, the

district court dismissed without prejudice Trusted Integration's common law unfair competition claim and breach of fiduciary duty claim for lack of subject matter jurisdiction. *Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 84 (D.D.C. 2010). The court held that DOJ's alleged breach of fiduciary duty to Trusted Integration was based on an agreement between the parties and, thus, sounded in contract. *Id.* Because Trusted Integration sought more than $10,000 in damages, the claim was governed by the Tucker Act and fell within the exclusive jurisdiction of the CFC. *Id.* With respect to Trusted Integration's unfair competition claim, the court held that it was similarly beyond the court's jurisdiction because the claim was based upon an alleged misrepresentation, which is outside of the Federal Tort Claims Act's waiver of sovereign immunity. *Id.* at 82-83. The district court, however, denied the United States' motion to dismiss the Lanham Act claim. *Id.* at 81.

The United States then sought dismissal of Trusted Integration's claims in the CFC. In its motion to dismiss, the United States argued that the CFC lacked subject matter jurisdiction because Trusted Integration's claims were barred by § 1500, which generally prohibits simultaneous actions against the government in separate forums. *Trusted Integration*, 93 Fed. Cl. at 97. After reviewing the party's motions, the CFC held that it lacked subject matter jurisdiction because both suits sought the same relief and were "based upon the same dispute between the same parties: defendant's allegedly wrongful development of an alternative to the TrustedAgent product in contravention of its agreement to cooperate with plaintiff in the submission and promotion of its CSAM offering." *Id.* at 101. Accordingly, the CFC dismissed the action without prejudice for lack of subject matter jurisdiction.

Trusted Integration timely appealed the CFC's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review *de novo* the CFC's decision to dismiss a case for lack of subject matter jurisdiction. *Bianchi v. United States*, 475 F.3d 1268, 1273 (Fed. Cir. 2007). Trusted Integration, as the plaintiff, bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

## I.

Shortly after the end of the civil war, Congress enacted the predecessor to the jurisdictional bar now codified in § 1500. *United States v. Tohono O'dham Nation*, 131 S. Ct. 1723, 1728 (2011). The statute was enacted to prevent duplicative lawsuits brought by residents of the former Confederacy. *See generally UNR Indus., Inc. v. United States*, 962 F.3d 1013, 1017–19 (Fed. Cir. 1992) (discussing the historic background of § 1500 and its predecessor). As the Supreme Court recently explained, these residents,

> so-called "cotton claimants"—named for their suits to recover for cotton taken by the Federal Government—sued the United States in the Court of Claims under the Abandoned Property Collection Act, 12 Stat. 820, while at the same time su-

ing federal officials in other courts, seeking relief under tort law for the same alleged actions.

*Tohono*, 131 S. Ct. at 1728. In other words, the statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories.

Pursuant to § 1500, the CFC does not have jurisdiction over a claim if the plaintiff has "another suit for or in respect to that claim pending against the United States or its agents." *Id.* at 1727. The Supreme Court has explained that two suits are "for or in respect to" the same claim if "the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993). Determining whether two suits are based on substantially the same operative facts "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." *Id.* at 210. Importantly, the legal theories underlying the asserted claims are not relevant to this inquiry. *Id.* ("That the two actions were based on different legal theories [does] not matter.").

After *Keene*, because the issue was not before the Supreme Court, it remained unclear whether two suits needed to seek some overlapping relief to fall within the strictures of § 1500. *See Keene Corp.*, 508 U.S. at 212 n.6 ("Because the issue is not presented on the facts of this case, we need not decide whether two actions based on the same operative facts, but seeking completely different relief, would implicate § 1500."). Shortly after *Keene* was decided, we held that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, *and* must seek the same relief." *Loveladies*

*Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc) (original emphasis omitted and emphasis added).

In *Tohono*, the Supreme Court recently clarified that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono*, 131 S. Ct. at 1731. In reaching this decision, the Court explained that:

> An interpretation of § 1500 focused on the facts rather than the relief a party seeks preserves the provision as it was meant to function, and it keeps the provision from becoming a mere pleading rule, to be circumvented by carving up a single transaction into overlapping pieces seeking different relief.

*Id.* at 1730. The Supreme Court noted that, by focusing only on the operative facts, its holding was generally consistent with the doctrine of res judicata, and, therefore gave "effect to the principles of preclusion law embodied in [§ 1500]." *Id.*

The Supreme Court reiterated that the statute " 'make[s] it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.' " *Id.* at 1728 (quoting *Keene Corp.*, 508 U.S. at 213). Indeed, § 1500 "suggests a broad prohibition, regardless of whether 'claim' carries a special or limited meaning." *Tohono*, 131 S. Ct. at 1728. The Supreme Court observed, moreover, that because § 1500 embodies principles of res judicata, determining whether two suits arise from substantially the same operative facts for purposes of that provision can be informed by how claims are defined for res judicata purposes. *Id.* at 1730.

After *Tohono*, it is clear that we must: (1) not view § 1500 narrowly; (2) focus only on whether two claims share the same operative facts and not on the relief requested; and (3) determine whether two suits share substantially the same operative facts by applying the test developed in *Keene Corp.* It is clear, moreover, that our analysis should consider the principles of res judicata to which the Supreme Court pointed. Applying these guiding principles to the claims asserted by Trusted Integration, we conclude that the CFC correctly concluded that Counts I and III of the CFC complaint arose from the same operative facts upon which the claims in the district court were predicated and are, thus, barred by § 1500. We conclude, however, that Trusted Integration's breach of license agreement claim—Count II—arises from different operative facts than the claims in the district court action and that the CFC erred in dismissing that claim under § 1500.

## II.

Because determining whether claims arise from substantially the same operative facts requires a comparison of the relevant claims, we address each claim in Trusted Integration's CFC complaint, albeit in an alternative order.

### A. Count I of the CFC Complaint is Barred by § 1500

Count I of Trusted Integration's CFC complaint alleges that DOJ's failure to include TrustedAgent in its CSAM offering breached an implied agreement between the parties to engage in a joint venture. The district court complaint contained a claim alleging that the same conduct constituted a breach of a fiduciary duty by DOJ premised on the parties' roles as joint venturers. Trusted Integration argues that because the district court complaint does not allege the existence of a contract, Count I of the CFC complaint cannot arise from substantially the

same operative facts pleaded in the district court complaint. DOJ argues that the only difference between Count I and the claims in the district court complaint are the legal theories supporting the claims, which, according to DOJ, are insufficient to place Count I outside § 1500's prohibition. We agree with DOJ.

Count I of the CFC complaint alleges that DOJ breached an oral or implied-in-fact contract, which required DOJ to use the TrustedAgent product in the CSAM offering. The CFC complaint alleges that DOJ breached this contract by

> (a) failing to adequately offer or promote TrustedAgent as part of DOJ's Center of Excellence offering; (b) developing a competing product and replacing TrustedAgent with the competing product in DOJ's Center for Excellence offering; and (c) replacing TrustedAgent with DOJ's alternative solution in the DOJ Center of Excellence Offering.

J.A. 34. In the district court complaint, Trusted Integration alleged that DOJ owed it a fiduciary duty based on their relationship. Trusted Integration alleged that DOJ breached this duty by, among other conduct: (a) "replacing TrustedAgent with DOJ's alternative solution in the DOJ center of Excellence offering"; and (b) "failing to adequately offer or promote TrustedAgent as part of DOJ's Center of Excellence offering." J.A. 48–49.

Comparing the conduct pleaded in these counts, it is apparent that each count involves nearly identical conduct. The only difference between these claims is Trusted Integration's characterization of the relationship it claims gave rise to the legal duty it asserts DOJ breached. As the district court concluded, Trusted Integration's breach of fiduciary duty claim, although sounding in tort, is essentially a contract claim because it appears to be

> based entirely upon breach by the government of a promise made to offer, promote, and use TrustedAgent's product in its FISMA solution. The only way the DOJ could have breached its fiduciary duties was to violate the terms of the implied or express agreement it had with [Trusted Integration].

*Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 84 (D.D.C. 2010). In essence, the breach of fiduciary duty claim asserted in the district court complaint is based upon the underlying agreement between DOJ and Trusted Integration that also serves as the basis for Count I of the CFC complaint. Trusted Integration was, therefore, alleging that the same conduct gave rise to different claims based upon purportedly distinct legal theories.

As previously discussed, since *Keene*, it has been clear that the legal theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts. *See Keene Corp.*, 508 U.S. at 212 (noting that § 1500 bars a subsequent suit even if "the two actions were based on different legal theories . . . ."). Because the same operative facts gave rise to both Count I of the CFC complaint and at least one of the counts in the district court complaint, the CFC correctly concluded that it lacked subject matter jurisdiction over Count I under § 1500.[2]

---

[2] We hold that the fact that the district court dismissed some of the counts of Trusted Integration's district court complaint has no effect on our analysis of each of the counts of the CFC complaint. We apply § 1500's jurisdictional bar "by looking to the facts existing when [Trusted Integration] filed each of its complaints, . . . follow[ing] the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time

B.  Count III of the CFC Complaint is Barred by § 1500

In Count III of its CFC complaint, Trusted Integration asserts that the DOJ breached the duty of good faith and fair dealing it owed Trusted Integration.  On appeal, Trusted Integration asserts that the CFC erred in finding this Count barred by § 1500.

The CFC's determination that § 1500 barred Count III was correct.  As with Count I of the CFC complaint, Count III is premised on the same operative facts as the district court complaint pleaded under different legal theories.  Count III of the CFC complaint alleges that DOJ breached the duty of good faith and fair dealing by:

> (a) failing to advise [Trusted Integration] that DOJ was developing an alternative solution to TrustedAgent . . .; (b) failing to advise [Trusted Integration] that DOJ intended to replace TrustedAgent with DOJ's alternative solution . . .; (c) replacing TrustedAgent with DOJ's alternative solution . . .; (d) failing to adequately offer or promote TrustedAgent as part of DOJ's Center of Excellence offering; (e) denying [Trusted Integration]

---

of the action brought."  *Keene Corp.*, 508 U.S. at 207 (internal quotation marks omitted); *see also Tohono*, 131 S. Ct. at 1731 ("Should the Nation choose to dismiss the latter action, or upon that action's completion, the Nation is free to file suit again in the CFC if the statute of limitations is no bar.").  *Tohono* clarifies that any suggestion in *Loveladies Harbor* that  the CFC can retroactively acquire jurisdiction after a co-pending district court suit is dismissed is wrong: The CFC suit must be dismissed and refiled to avoid § 1500.  *Tohono*, 131 S. Ct. at 1731.  At the time the CFC complaint was filed, all of Trusted Integration's claims were still pending before the district court. *Trusted Integration*, 93 Fed. Cl. at 96–97.

access to potential customers of TrustedAgent; and (f) disparaging TrustedAgent product.

J.A. 35.

Count III of the district court complaint similarly alleged that DOJ owed Trusted Integration a fiduciary duty based on their relationship. Trusted Integration alleges that the same conduct quoted above also breached the fiduciary duty that arose from their relationship.

As with Count I, the only difference between Count III in the district court complaint and Count III in the CFC complaint is that, in the district court complaint, the fiduciary duty arose from Trusted Integration and DOJ's relationship in a joint venture, while in the CFC complaint, the fiduciary duty allegedly arose from an oral or implied-in-fact contract. This characterization, however, is not relevant to whether the claims arose from the same operative facts. *See Keene Corp.*, 508 U.S. at 212. Trusted Integration alleges that the same conduct breached both DOJ's fiduciary duty to it and a contract between them. The same operative facts, therefore, gave rise to Count III before the CFC and Count III before the district court.

C.  Count II of the CFC Complaint is not Barred by §1500

In Count II of the CFC complaint, Trusted Integration alleges that DOJ breached the TrustedAgent licensing agreement. The CFC held that this count also arose from the same operative facts as the claims Trusted Integration brought in the district court. *Trusted Integration*, 93 Fed. Cl. at 104. Trusted Integration argues this was error because Count II is premised upon completely different conduct, and the district court complaint alleges no claims based on breach of the licensing agreement. Specifically, Trusted Integration contends that "the breach of the

License Agreement claim and the material facts support-
ing the claim have no relationship to a breach by DOJ of
an agreement 'to include TrustedAgent as part of [DOJ's]
. . . CSAM offering.' " Appellant's Br. 16. On appeal, DOJ
asserts that the CFC properly concluded that § 1500
barred Count II because the district court complaint
contained claims based on breach of the license agree-
ment.[3]  Significantly, DOJ does not argue that, if this
court concludes that the district court complaint did not
contain claims based on the breach of the license agree-
ment or conduct that would have breached the license
agreement, § 1500 still bars Count II. For the reasons
discussed below, we agree with Trusted Integration.

Count II of Trusted Integration's CFC complaint al-
leges that DOJ breached its license agreement for the
TrustedAgent product by: "(a) failing to limit its use of
TrustedAgent product to internal use; (b) using the Trust-
edAgent product to develop a competing product; and (c)
failing to maintain the confidentiality of [Trusted Integra-
tion's] confidential information." J.A. 34. More specifi-
cally, Trusted Integration claims that DOJ breached the
license agreement when "DOJ CSAM developers, during
routine maintenance, accessed the TrustedAgent Oracle

---

[3]    In Trusted Integration's reply brief, it argued that
DOJ should be collaterally estopped from arguing that the
license agreement gave rise to the fiduciary duties at
issue in the district court complaint. In response, DOJ
moved to strike this portion of Trusted Integration's reply
brief because Trusted Integration did not raise the argu-
ment in its opening brief. As discussed below, we con-
clude that DOJ's argument that Trusted Integration's
district court complaint contained claims based on the
breach of the licensing agreement is not well-taken be-
cause it is wrong, not because collateral estoppel prevents
us from considering the argument. Its motion to strike
these portions of Trusted Integration's reply brief is,
therefore, moot.

database for data migration . . . to assess how the TrustedAgent FISMA software tools were designed . . . ." J.A. 32–33. The CFC concluded that this Count arose from substantially the same operative facts as the claims alleged in the district court complaint because it was related to DOJ's allegedly wrongful development of an alternative to TrustedAgent. *Trusted Integration*, 93 Fed. Cl. at 101. While this is a close question, for the reasons articulated below, we conclude that the CFC erred by dismissing this count of the CFC complaint because it does not arise from substantially the same operative facts as Trusted Integration's district court complaint.

The basis of Trusted Integration's district court complaint was DOJ's creation of an alternative to Trusted Integration's product and promotion of that alternative in contravention of its promise to utilize TrustedAgent—the very promise that convinced Trusted Integration to partner with DOJ in its bid for COE status. Allegations regarding that activity provide the support for claims I and III of the CFC complaint and for all of the counts of the district court complaint. The basis of Count II of the CFC complaint, however, was a distinct contract: the license agreement which restricted DOJ's access to and use of TrustedAgent. The district court complaint and Count II are, therefore, premised on independent contracts.

Contrary to DOJ's assertion, moreover, the district court complaint does not contain a claim based upon the license agreement, nor does it allege that the license agreement gave rise to the fiduciary duty Trusted Integration alleges DOJ breached. Instead, the district court complaint alleges that DOJ and Trusted Integration agreed to jointly offer a solution as a COE, and this decision gave rise to the joint business enterprise. This joint enterprise is the relationship Trusted Integration argues

gave rise to the fiduciary duty discussed in the district court complaint. The district court recognized this fact. *Trusted Integration*, 679 F. Supp. 2d at 77 n.1 ("Defendant suggests that . . . the license agreement . . . is the 'exclusive basis' of the relationship between plaintiff and defendant. But plaintiff makes no allegations about the license, other than that it existed. . . . [P]laintiff's opposition brief argues that the source of its rights are 'not contractual' and that it entered into a joint venture with defendant 'separate from a contract.' ").

Not only are these distinct contracts, but their breach requires different conduct. The DOJ allegedly breached the license agreement by accessing TrustedAgent for the purpose of copying the program to aid DOJ's development of an alternative to TrustedAgent. In contrast, breach of the agreement to use TrustedAgent as part of CSAM required removal of TrustedAgent from CSAM and the promotion of CSAM without TrustedAgent.

Importantly, the facts that would give rise to breach of either of these agreements are not legally operative for establishing breach of the other. Because the district court complaint is based on the fact that DOJ developed an alternative and promoted it, *how* the alternative was developed is not a legally operative fact. Similarly, the fact that DOJ had a separate agreement to utilize TrustedAgent in CSAM is not relevant to whether DOJ breached the license agreement by accessing Trusted Integration's database to facilitate development of an alternative to TrustedAgent. The license agreement is not just an additional legal basis supporting Trusted Integration's claim to relief due to DOJ's development and promotion of CSAM without TrustedAgent; it is the source, and the only asserted source, for Trusted Integration's claim that DOJ was unlawfully using its property. Accordingly, we find that Count II and the counts of the district court

complaint are not based upon substantially the same operative facts.

We believe that this conclusion is consistent with the principles of res judicata the Supreme Court emphasized in *Tohono*. In drawing its analogy to the preclusion principles of res judicata, the Supreme Court pointed to the principles which were in force at the time the predecessor to § 1500 was enacted.[4] Specifically the Supreme Court explained, that when the predecessor to § 1500 was enacted, there were two governing tests for determining whether claims were precluded by their assertion in earlier litigation: the act or contract test, and the evidence test. *Tohono*, 131 S. Ct. at 1730. Summarizing the first test, the act or contract test, the Supreme Court explained that "[t]he true distinction between demands or rights of

---

[4]    While the Supreme Court made passing reference to the modern transaction test of the Restatement Second of Judgments, *Tohono*, 131 S. Ct. at 1730, it made clear that it is the tests in place at the time the predecessor to § 1500 was enacted by which we must be guided. *Id.*; *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 (2011) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007)) (citing *Beck v. Prupis*, 529 U.S. 494, 500–501 (2000)) ("[W]here Congress uses a common-law term in a statute, we assume the 'term . . . comes with a common law meaning, absent anything pointing another way.' "); *Neder v. United States*, 527 U.S. 1, 21 (1999) (" 'Where Congress uses terms that have accumulated settled meaning under . . . the common law, [we] must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms.' " (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992))). Here, Congress' interchangeable use of the terms "cause of action" and "claim" in § 1500 and its predecessor establishes that it intended those terms to carry their then-established common law meaning. *See Tohono*, 131 S. Ct. at 1730 (noting that "principles of preclusion law [are] embodied in the statute").

action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts." *Id.* (quoting J. Wells, *Res Adjudicata and Stare Decisis* § 241, p. 208 (1878)). Under the second test, the evidence test, two suits involve the same claim if: "the same evidence support[s] and establish[es] both the present and the former cause of action?" *Id.* (quoting 2 H. Black, *Law of Judgments* § 726, p. 866 (1891)).

We conclude that neither the act or contract test, nor the evidence test, mandates the conclusion that Count II and the counts of the district court complaint be considered the same claim. As discussed above, Count II and the district court complaint arose out of different contracts. The act or contract test, therefore, indicates that Count II and the district court complaint do not involve the same claim. *See, e.g.*, *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 358–59 (1876) (holding for the purpose of res judicata that, because the two suits involved separate contracts, a prior suit for recovery of coupons attached to bonds did not involve the same claim as a later suit for recovery of later maturing coupons attached to the same bonds).

The evidence test similarly does not warrant the conclusion that Count II and the counts in the district court complaint are based on the same claim. While evidence relating to how the DOJ developed its TrustedAgent alternative would support the claims asserted in the district court complaint, this evidence would not both support *and* establish the district court counts, which was a prerequisite for application of the evidence test. *See, e.g.*, *Stone v. United States*, 64 F. 667, 670–71 (9th Cir. 1894) (holding that a prior suit and a subsequent suit between the same parties did not involve the same claim

because the evidence necessary to sustain the subsequent suit was insufficient to entitle the plaintiff to relief in the prior suit), *aff'd*, 167 U.S. 178 (1897); *Stowell v. Chamberlain*, 60 N.Y. 272, 276 (1875) ("The question is whether the same evidence will maintain both actions.  If the evidence which will sustain the second would have authorized a recovery in the first, under the allegations of the complaint, the first judgment is an absolute bar to the second." (citation omitted)); *Gayer v. Parker*, 39 N.W. 845, 846 (Neb. 1888) ("If different proofs are required to sustain the two actions, a judgment in one of them is no bar to the other."); *Gates v. Goreham*, 5 Vt. 317, 1833 WL 2359, at *3 (1833) ("In the case at bar, it cannot be said, that the evidence, which was sufficient to support the first action, was sufficient to support the second.  It did not tend, at all, to prove a conversion of the sheep by the defendant.").

Thus, under the evidence test as it then existed, the overlapping evidence needed to be both relevant to *and legally operative to prove* the prior claim before res judicata would act as a bar to the subsequent claim.  The evidence necessary to sustain Count II is insufficient to have entitled Trusted Integration to relief under any of the claims alleged in the district court complaint.  To be entitled to relief under Count II, Trusted Integration must establish that DOJ exceeded the scope of the license agreement.  But, to establish the claims alleged in the district court complaint, Trusted Integration would have to present evidence that it had a joint venture with DOJ, and DOJ promoted and sold a product that violated the fiduciary duty that arose from the joint venture.  Evidence related to the license agreement, while relevant as part of the *res gestae* of DOJ's wrongful acts, would not establish that Trusted Integration and DOJ had a joint venture, nor that DOJ's conduct violated a fiduciary duty it owed

Trusted Integration. This evidence, therefore, would be insufficient to establish the claims alleged in the district court complaint, and vice versa.

Accordingly, our conclusion that Count II and the district court complaint do not arise from substantially the same operative facts is not at odds with the preclusion principles incorporated in § 1500 when passed.[5]

Finally, our conclusion that Count II and the district court complaint are not for or in respect to the same claim, is consistent with the purpose of the predecessor to § 1500, which was to prevent claimants from seeking double recovery by maintaining two suits arising from the same factual foundation, but pleaded under different legal theories. *See Keene Corp.*, 508 U.S. at 206–07 ("Congress did not intend the [§ 1500] to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation."). This is not a case where Trusted Integration is simply repackaging the same conduct into two distinct legal theories. Instead, Trusted Integration has asserted two distinct claims, that involve distinct agreements, whose breaches give rise to distinct

---

[5] We do not adopt these 19th century tests as the standard by which to measure whether two claims arise from substantially the same set of operative facts, nor do we believe *Tohono* directs us to do so. Rather, we test our conclusion that the claim in Count II is not barred by § 1500 by reference to these tests simply to confirm that our conclusion remains true to the principles encompassed in that statutory provision. Thus, the fact that two suits arise from different claims under the 19th century tests does not compel the conclusion that the suits do not arise from substantially the same operative facts. If two suits are determined to arise from the same claim under either of these res judicata tests, however, application of the bar of § 1500 is likely compelled.

damages, and which require distinct proofs.  For these reasons, the CFC erred when it concluded that Count II in the CFC complaint arose from the same operative facts as Trusted Integration's district court claims.

CONCLUSION

Because Count I and Count III arise from the same operative facts, as the claims previously asserted by Trusted Integration in federal district court, the CFC properly held that these claims are barred by § 1500.  The CFC erred, however, by dismissing Count II because it does not arise from substantially the same operative facts as the district court claims.  Accordingly, § 1500 does not apply to Count II and the CFC has subject matter jurisdiction over that claim.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Each party shall bear its own costs.