NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CLYDE C. GRADY, II,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5129

---

Appeal from the United States Court of Federal Claims in No. 13-CV-0015, Senior Judge Eric G. Bruggink.

---

Decided: May 7, 2014

---

CLYDE C. GRADY, II, of Jacksonville, Arkansas, pro se.

JAMES W. POIRIER, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, MARTIN F. HOCKEY, Assistant Director. Of counsel on the brief was JOHN P. SHOLAR, Attorney, United States Securities and Exchange Commission, of Washington, DC.

---

Before RADER, *Chief Judge,* PROST, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Clyde C. Grady seeks review of a decision of the United States Court of Federal Claims ("trial court") dismissing his complaint against the Securities and Exchange Commission ("SEC") for lack of jurisdiction. *See Grady v. United States*, No. 13-15C, 2013 WL 4957344 (Fed. Cl. July 31, 2013). In his complaint, Mr. Grady alleges that he lost $106,935.62 as a result of a stock market "Flash Crash." He claims that the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("1934 Act") created an implied contract between investors like Mr. Grady and the SEC, which the SEC breached when it failed to prevent the crash. The complaint also alleges that the SEC breached its fiduciary duty to Mr. Grady by permitting stocks to sell at prices below their actual value. Because we conclude that Mr. Grady has failed to establish that the trial court has jurisdiction over his claims, we affirm the dismissal of Mr. Grady's complaint.

## BACKGROUND

Mr. Grady filed a complaint on January 7, 2013, alleging that he lost $106,935.62 when the Dow Jones Industrial Average dropped almost a thousand points on May 6, 2010. Mr. Grady was not alone—many individual investors suffered losses that day by relying on an investment tool known as a "stop loss order," which automatically sold stocks when they dropped below certain prices. In fact, the SEC estimates that more than $2 billion in individual investor stop loss orders were triggered within thirty minutes. This event has been dubbed the "Flash Crash."

In his complaint, Mr. Grady alleges that by failing to prevent the Flash Crash, the SEC breached an implied-in-fact contract with him arising out of the 1934 Act. He also alleges that the SEC violated the terms of a fiduciary duty it owed him that can be inferred from the 1934 Act. The trial court concluded that the 1934 Act neither creates such an implied-in-fact contract nor does it establish a fiduciary duty on the part of the SEC to investors. Finding that the 1934 Act is not money mandating within the terms of the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), the trial court granted the Government's motion to dismiss for lack of subject matter jurisdiction. Since subject matter jurisdiction is a question of law, we review this matter de novo. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### DISCUSSION

Under the Tucker Act, the trial court is authorized to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Therefore, for the trial court to have jurisdiction over Mr. Grady's claims, he must identify "substantive right[s] for money damages against the United States separate from the Tucker Act," i.e., a source of law that is money mandating within the terms of that statute. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). For the reasons discussed herein, Mr. Grady has failed to do so for both his "implied-in-fact" claim and his "fiduciary duty" claim.

## A. Mr. Grady's "Implied-In-Fact" Claim

The Tucker Act provides jurisdiction over implied-in-fact contract claims against the government. *See United States v. Mitchell*, 463 U.S. 206, 215 (1983) (citing 28 U.S.C. § 1491). An implied-in-fact contract claim requires allegations of a specific "meeting of the minds" between an authorized representative of the United States and the claimant. *See Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996). However, the trial court lacks jurisdiction under the Tucker Act to consider contract claims arising out of contracts implied-in-law. *See Merritt v. United States*, 267 U.S. 338, 341 (1925). An implied-in-law contract is a promise gleaned from a legal duty to act in a certain way. *Id.*; *see also D&N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003) ("An agency's performance of its regulatory or sovereign functions does not create contractual obligations.").

To avoid dismissal, Mr. Grady did not have to prove the existence of an implied-in-fact contract in the complaint, but he did have to allege one. *See Kawa v. United States*, 77 Fed. Cl. 294, 303 (2007). In this case, Mr. Grady has alleged that the SEC had a statutory duty "to maintain fair and orderly markets for the 'protection of investors.'" J.A. 369. Although he has characterized this as an "implied-in-fact" contract claim, Mr. Grady has failed to make any of the required allegations of a specific contract between himself and the SEC. Thus, we disagree with Mr. Grady's characterization and instead conclude that this claim involves a contract implied-in-law. *See Hercules*, 516 U.S. at 424. Mr. Grady has, therefore, failed to allege a valid implied-in-fact contract claim over which the trial court has jurisdiction. We affirm the trial court's dismissal of Mr. Grady's "implied-in-fact" claim for lack of jurisdiction.

## B.  Mr. Grady's Fiduciary Duty Claim

The Tucker Act also provides for jurisdiction over claims founded on a fiduciary duty the government owes to an individual or a group of citizens.  *United States v. Mitchell*, 463 U.S. 206, 211 (1983).  However, this applies only to claims for a violation of a statute or regulation that mandates the payment of money when the duty is violated.  *Id*. at 216-17.  Below, the trial court ruled that Mr. Grady failed to cite to any statute or regulation that can fairly be construed as requiring the payment of money when the SEC fails to maintain "fair and orderly markets" as is mandated by the statute.  *Grady*, 2013 WL 4957344, at *3.

On appeal, Mr. Grady has again not cited to any specific money-mandating statute or regulation.  Instead, he contends that the SEC has essentially assumed control of his investments and that the SEC now holds all stock market investments in trust, so a money-mandating requirement can be fairly inferred from this trust relationship.  Appellant's Br. 8-9.  In support of his contention, Mr. Grady cites to various cases involving the government's management of property held in trust for American Indian tribes.  *Id*. at 25-27.

However, in those cases the government exercised direct control of tribal property.  Here, Mr. Grady controlled his own money, and he does not allege that the SEC actually controlled his purchases or sales of securities.

Because Mr. Grady has not cited to any specific money-mandating statute or regulation and has failed to allege that the SEC controlled his assets, we affirm the trial court's dismissal of Mr. Grady's claim regarding a fiduciary duty for lack of jurisdiction.

CONCLUSION

For the foregoing reasons we affirm the trial court's dismissal of Mr. Grady's complaint.

**AFFIRMED**

COSTS

Each party shall bear its own costs.