# United States Court of Appeals
## for the Federal Circuit

---

SALMA ACEVEDO, JAIME A. ALVARADO, PETER J. APPELT, JOHN BILOTTI, JR., WILLIAM W. BRADLEY, JEFFREY BRODACK, JOHNNY R. CISNEROS, PIERRE DE BONO, JAMES E. DEZENDORF, ROBERT DOBIECKI, CESAR ESPEJO, TARA FIONDA, LISA FOOSE, JUAN ANTONIO GALLARDO, CATHERINE GIARRAPUTO, SERGIO PIMENTA GODINHO, BRIAN HERLIHY, CRISTOBAL HERNANDEZ, TRACEY HILL, CHERYL LISE JACOBO, DAVID F. JONES, DAVID R. KAISER, DAVID LANDERER, ANDREW J. LONG, RICHARD J. LORIA, JEANNETTE POZO, GUILLERMO C. SALOMON, JESSICA ALFRED, ADELA T. ARGUELLO, MARITA BAEZ, DANIEL E. BAUTISTA, PABLO R. CARDENAS, OLGA L. CASEY, CHRISTINE M. COOPER, TOMMY L. COOPER, GEORGE O. DORADO, KEITH R. DURHAM, JOSEFINA FARIAS, KENNETH P. KELLY, RAYMOND F. KNOPP, TAMARA T. LACY, FRANK MADDALENA, RALPH MARTINEZ, CLAUDIA MONISTROL, RAYMOND MONZON, RAYMOND MORABITO, TODD NICHOLAS, KAREN O'NEILL, THOMAS O'SHEA, DENNYSON F. PADILLA, JOSE E. PORRONDO, JEANNINE PERNICIARO, CHRISTINE POWERS, EMA QYTEZA, DEBORAH ANN REINOA, GONZALO REINOSA, JOHN RIOMAO, DULCE MARIA RODRIGUEZ, KARLA RODRIGUEZ, KERRI ROONEY, NORMAN A. ROY, GEORGE RUDY, DEBRA K. RUTTER, JACQUELINE SALAMON, MICHAEL B. SAUER, KENNETH J. SCOTT, CHARLES SHEGOG, LINDA SHOUPE, MICHAEL

**SILVA, STACEY SIMON, ADRIAN SMITH,
MICHAEL J. SMITH, RONALD M. SMITH, PHILLIP
THOMPSON, PETER TOUHY, WAYNE T. WILSON,
JOHN F. YOUNG, ROBERT ZYLSTRA,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2015-5126

————————————

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00768-EDK, Judge Elaine Kaplan.

————————————

Decided: June 9, 2016

————————————

JULES BERNSTEIN, Bernstein & Lipsett, P.C., Washington, DC, argued for plaintiffs-appellants. Also represented by LINDA LIPSETT; EDGAR N. JAMES, James & Hoffman, P.C., Washington, DC.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

————————————

Before PROST, *Chief Judge*, LOURIE and TARANTO, *Circuit Judges.*

PROST, *Chief Judge*.

Plaintiffs-Appellants Salma Acevedo *et al.* ("Appellants") allege that the United States violated 5 U.S.C. § 5928 by refusing to provide them with danger pay allowances. The Court of Federal Claims ("Claims Court") held that it lacked jurisdiction over the case because § 5928 and its implementing regulations are not money-mandating, as required for the court to possess jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1). *Acevedo v. United States*, 121 Fed. Cl. 57, 59 (2015). For the reasons stated below, we affirm the Claims Court's ruling.

## BACKGROUND

The Appellants in this case are employed by the U.S. Customs and Border Protection, Department of Homeland Security ("CBP"), as present and former Supply Chain Security Specialists in its Customs-Trade Protection Against Terrorism ("C-TPAT") program. The purpose of the C-TPAT program is to improve the security of the importation of goods into the United States. Pursuant to this mission, C-TPAT employees, including the Appellants in this case, travel and work at foreign posts designated by the Secretary of State as "danger pay posts" in an attempt to prevent terrorists and terrorist weapons from entering the United States.

In Count I of their complaint against the government, the Appellants alleged that they did not receive overtime pay as required by the Fair Labor Standards Act and thus sought back pay, liquidated damages, attorney fees and other relief pursuant to 29 U.S.C. § 216(b). In Count II, the Appellants alleged violations of 5 U.S.C. § 5928, contending that CBP refused to provide them with danger pay allowances for work performed in posts of duty that the Department of State has designated as eligible for such allowances.

Section 5928 ("the danger pay statute") is part of the Overseas Differentials and Allowances Act of 1960 ("ODAA" or "the Act"). Section 5928 provides as follows:

> An employee serving in a foreign area *may be granted* a danger pay allowance on the basis of civil insurrection, civil war, terrorism, or wartime conditions which threaten physical harm or imminent danger to the health or well-being of the employee. A danger pay allowance may not exceed 35 percent of the basic pay of the employee, except that if an employee is granted an additional differential under section 5925(b) of this title with respect to an assignment, the sum of that additional differential and any danger pay allowance granted to the employee with respect to that assignment may not exceed 35 percent of the basic pay of the employee. The presence of nonessential personnel or dependents shall not preclude payment of an allowance under this section. In each instance where an allowance under this section is initiated or terminated, the Secretary of State shall inform the Speaker of the House of Representatives and the Committee on Foreign Relations of the Senate of the action taken and the circumstances justifying it.

5 U.S.C. § 5928 (emphasis added).

Pursuant to Executive Order No. 10,903, the President delegated to the Secretary of State the authority to promulgate regulations governing the payment of allowances under § 5928. Exec. Order No. 10,903, 26 Fed. Reg. 217 (Jan. 9, 1961); *see also* Department of State Standardized Regulations ("DSSR") §§ 011(a), 650. The regulations state that the "danger pay allowance prescribed in Chapter 650 *may be granted* to employees defined in Section 040i." DSSR § 031.2 (emphasis added).

The DSSR also prescribes the basis for danger pay allowance:

> A danger pay allowance is established by the Secretary of State when, and only when, civil insurrection, civil war, terrorism or wartime conditions threaten physical harm or imminent danger to the health or well being of a majority of employees officially stationed or detailed at a post or country/area in a foreign area. To determine whether the situation meets the danger pay criteria, a post usually must submit the Danger Pay Factors Form (FS–578) along with pertinent supporting information to the Department of State (Office of Allowances) for review. The Director of the Office of Allowances will chair a working group which will make a recommendation to the Assistant Secretary of State for Administration concerning a danger pay designation.

DSSR § 653.1. Moreover, section 013 of the DSSR, entitled "Authority of Head of Agency," provides, in relevant part:

> When authorized by law, the head of an agency may defray official residence expenses for, and grant . . . danger pay . . . to an employee of his/her agency and require an accounting therefor, subject to the provisions of these regulations and the availability of funds. Within the scope of these regulations, the head of an agency may issue such further implementing regulations as he/she may deem necessary for the guidance of his/her agency with regard to the granting of and accounting for these payments.

The government moved to dismiss Count II of the Appellants' complaint, contending that the Claims Court lacks jurisdiction on the grounds that 5 U.S.C. § 5928 is not a money-mandating statute, that the DSSR is not

money-mandating, and that CBP has not adopted a policy of paying danger pay to all eligible employees. The Claims Court agreed with the government and granted its motion to dismiss Count II. The Claims Court then granted the Appellants' motion pursuant to Court of Federal Claims Rule 54(b) and entered final judgment with respect to the danger pay claim. The Appellants timely appealed to us.

## DISCUSSION

We review de novo the Claims Court's decision to dismiss a case for lack of subject matter jurisdiction. *Bianchi v. United States*, 475 F.3d 1268, 1273 (Fed. Cir. 2007). The Appellants bear the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Id.*

The Tucker Act provides the Claims Court with jurisdiction over claims "against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). "Instead, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages." *Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000).

Here, the Appellants argue that "[t]he CBP policy and practice of paying danger pay to its employees, the relevant statutory provisions of 5 U.S.C. §§ 5921–5928, their legislative history, and the provisions of the DSSR serve to establish 5 U.S.C. § 5928 to be money-mandating." Appellants' Br. 11–12. As the Claims Court properly determined, however, the Appellants are incorrect.

In a thorough and well-reasoned decision, the Claims Court concluded that the danger pay statute and the DSSR, taken individually or together, are merely money-authorizing and not money-mandating. *Acevedo*, 121 Fed. Cl. at 63–66. The Claims Court also determined that the Appellants had "failed to establish the existence of agency regulations or a formal agency policy by which all employees eligible to receive danger pay allowances under the DSSR must be provided such allowances." *Id.* at 66. We agree.

The Appellants rely on the purpose and legislative history of § 5928 to argue that it is money-mandating. They acknowledge that § 5928 says that "[a]n employee serving in a foreign area *may be granted* a danger pay allowance" but they argue that this is a case where the presumption that "may" means money-authorizing and not money-mandating can be rebutted. For support, the Appellants cite to *Doe v. United States* where we held that the moiety statute—which authorizes the Secretary of the Treasury to compensate informants in customs investigations with a portion of the recovery—is money-mandating, even though the statute uses the word "may." 100 F.3d 1576, 1582 (Fed. Cir. 1996); 19 U.S.C. § 1619(a) (2000) (stating that "the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered"). But in *Doe*, we specifically noted that we were not "writ[ing] on a clean slate," and explained that prior cases had interpreted the moiety statute as requiring some award, although it left to the Secretary's discretion the amount of the award. 100 F.3d

at 1582. We also relied on our understanding that Congress did not intend to vest complete discretion with the Secretary in awarding the compensation. *Id.* Here, we do not have the same legislative history or understanding that § 5928 was intended to require some type of danger payment, and only the amount was up to the discretion of the agency.

Indeed, that is precisely what we concluded in *Roberts v. United States*, 745 F.3d 1158, 1162 (Fed. Cir. 2014). Looking at the same Act and evaluating similar arguments, we determined that § 5928, standing alone, is not money-mandating. We also determined that the DSSR is not money-mandating, at least with respect to living quarters allowances ("LQA"). *Id.* at 1164–65. Much of the same analysis from *Roberts* is applicable here. For example, in *Roberts*, we noted that section 013 of the DSSR contemplates further regulations, because it states:

> When authorized by law, the head of an agency may defray official residence expenses for, and grant . . . [danger pay and LQA] . . . to an employee of his/her agency . . . . Within the scope of these regulations, *the head of an agency may issue such further implementing regulations as he/she may deem necessary for the guidance of his/her agency with regard to the granting of and accounting for these payments.*

DSSR § 013 (emphasis added). Similarly, the definition of "employee" in the danger pay and LQA regulations contemplates further regulations, stating: "'Employee' means an individual . . . who is . . . eligible for allowances and differential under subchapter 030 . . . *as determined by relevant agency authority*." DSSR § 040(i)(4) (emphasis added).

The Appellants contend that the danger pay regulations are different from the LQA regulations in key ways, such that our conclusion in *Roberts* is not applicable here.

The Appellants argue that in the case of danger pay, unlike LQA, the eligibility requirements are "fully and completely set forth in the DSSR and no further implementing regulations or agency decisions are needed or contemplated." Appellants' Br. 39–40. But the Appellants fail to specifically indicate the differences between the regulatory schemes that would support that broad proposition. In contrast, as the government notes, the LQA provisions and danger pay provisions are "equally detailed." Appellee's Br. 24. For example, the DSSR provides the specific costs that LQA is designed to cover, DSSR § 131.3 ("LQA rates are designed to cover substantially all of the rent, heat, light, fuel, gas, electricity, water, taxes . . . insurance, and agent's fee . . . ."); what qualifies as "rent" under the provision, DSSR § 131.2; when and how LQA grants commence, DSSR § 132.1; when and how LQA grants terminate, DSSR § 132.4; how to determine the LQA rate, DSSR § 134; and how LQA is paid, DSSR § 135. Notably, what is not in the DSSR is any requirement that LQA be paid; instead the regulations merely set forth a framework for LQA when an agency exercises its discretion to provide such allowances. That is equally true for the danger pay allowance. Thus, our conclusion in *Roberts* that § 5928 and the DSSR "standing alone, are only money-authorizing, not money-mandating," is also applicable in this case. 745 F.3d at 1162.

Finally, the Appellants argue that the CBP has an unwritten policy of paying danger pay and that policy, in conjunction with the statute and regulations, confers Tucker Act jurisdiction. They note that in *Roberts*, although we concluded that § 5928 and the DSSR were not money-mandating, we nonetheless ultimately held that the Claims Court had jurisdiction over the case. We relied on the fact that there were "[f]urther implementing regulations," *id.* at 1160, which, together with the statute

and DSSR, were "fairly construed as money-mandating," *id.* at 1166. Here, we have no such regulations.

The Appellants point only to a number of letters and emails from various officials—including CBP's Assistant Commissioner for Legislative Affairs, individuals from CBP's Office of Congressional Affairs, and individuals from CBP's Office of Human Resources Management—which state that CBP provides danger pay to all eligible employees. But as the Claims Court noted, "[a]t best" these letters show "that CBP has had a practice of providing such pay to employees, in at least some cases, upon the request of their supervisors." *Acevedo*, 121 Fed. Cl. at 66. The Appellants have not, however "identified any agency-wide policy or directive that requires supervisors to request such allowances for employees who meet the State Department's eligibility criteria." *Id.* Moreover, such letters and emails are not akin to formal agency rules or binding written directives and therefore cannot constitute a "source of substantive law [that] can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 218 (1983).

Because § 5928, the DSSR, and the alleged unwritten policy of providing danger pay, cannot reasonably be construed as "money-mandating," we conclude that the Appellants have failed to establish jurisdiction over their complaint.

CONCLUSION

For the foregoing reasons, we affirm the Claims Court's dismissal for lack of subject matter jurisdiction.

**AFFIRMED**